OPINION
{¶ 1} Defendant, William Marcus Johnson, appeals from his convictions for possession of heroin, with a firearm specification, and possession of cocaine, which were entered on his negotiated pleas of no contest, and from the sentence imposed on those convictions pursuant to law.
 {¶ 2} Johnson entered his no contest pleas after the court had denied his motion to suppress physical evidence seized by police upon his arrest and statements he made to police after he was arrested. The errors Johnson assigns on appeal arise from the denial of his suppression motion.
 {¶ 3} Two hearings were held on Johnson's motion to suppress. The record of those hearings demonstrates that on December 2, 2003, Johnson's vehicle was stopped by Deputy Troy Bodine of the Montgomery County Sheriff's Department for failure to signal a left turn. Bodine and two other officers had Johnson under surveillance on suspicion of drug trafficking when he was stopped. Bodine is a member of the CANE drug task force, and he had a dog trained to detect the odor of drugs with him in his cruiser when he stopped Johnson.
 {¶ 4} Deputy Bodine testified that Johnson emerged from his vehicle and walked toward Bodine's cruiser. Bodine said that in his experience, that conduct is consistent with attempting to avoid the prospect that an officer might see incriminating evidence in the driver's vehicle.
 {¶ 5} Bodine placed Defendant Johnson in the rear seat of his cruiser. After he obtained identification information, Bodine "ran" the data through his computer to learn whether any warrants for Johnson's arrest were outstanding. Bodine also interviewed a female passenger in Johnson's vehicle. When their stories about their activities that night diverged, Bodine walked his drug detection dog around Johnson's vehicle. When the dog alerted, Bodine searched the vehicle and found various drugs and a gun. All this occurred before Bodine had received a reply to his computer request for information concerning Johnson.
 {¶ 6} After the gun and drugs were found and while Johnson was in custody, Johnson asked Deputy Bodine whether Bodine might help him by "losing" some of the drugs Bodine found in Defendant's vehicle. Defendant had not been Mirandized or questioned concerning the drugs when he made the statement.
 {¶ 7} Johnson was indicted on multiple charges, which were later reduced to those to which he entered no contest pleas. Johnson filed a timely notice of appeal from his convictions and sentence.
 {¶ 8} First Assignment of Error
 {¶ 9} "There was insufficient evidence that the deputy executing the traffic stop in this matter was competent to testify under Evid.R. 601C."
 {¶ 10} Evid.R. 601(C) provides: "Every person is competent to testify as a witness except * * * [a]n officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute."
 {¶ 11} Prohibitions substantially the same as those in Evid.R. 601(C) are set out in R.C. 4549.14 and R.C. 4549.16.
 {¶ 12} Johnson argues that the trial court erred when it relied on Deputy Bodine's testimony to deny Johnson's motion to suppress evidence because the State failed to present evidence demonstrating that Bodine was in a marked cruiser and/or wearing a distinctive uniform when he stopped Johnson for a violation of the traffic code. We do not agree.
 {¶ 13} The object of Evid.R. 601 is to declare all persons competent to testify in all cases, civil or criminal, unless specifically designated as incompetent on one of the grounds in paragraphs (A) through (E). "[B]ecause of the general principle that a witness over the age of ten is presumed to be competent, the burden is upon the party opposing the admission of testimony to establish, to the satisfaction of the trial judge, that an officer on duty for the purpose of enforcing traffic laws was not wearing a legally distinctive uniform at the time of arrest. Unless the party opposing the admission of the testimony is able to establish that fact to the satisfaction of the trial judge, the testimony should be admitted. State v. Rau (1989), 65 Ohio App.3d 478." State v.Mills (Sept. 29, 1993), Clark App. No. 3032, Fain, J., concurring.
 {¶ 14} Johnson failed to object that Deputy Bodine was incompetent to testify on the grounds set out in Evid.R. 601(C). Because that was his burden, Johnson's failure waives the error he assigns on appeal. Statev. Clark (1983), 10 Ohio App.3d 308; Evid.R. 103(A)(1).
 {¶ 15} The first assignment of error is overruled.
 {¶ 16} Second Assignment of Error
 {¶ 17} "The appellant was detained without probable cause and was detained longer than necessary to execute a traffic stop."
 {¶ 18} The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity other than the traffic violation and therefore justify continued detention. State v. Chatton
(1984), 11 Ohio St.3d 59; State v. Robinette, 80 Ohio St.3d 234,1997-Ohio-343; State v. Ramos, 155 Ohio App.3d 396, 2003-Ohio-6535. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue a traffic citation and perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. Ramos, supra; State v. Carlson (1995),102 Ohio App.3d 585, 598-599. These investigative duties must be performed diligently. Id.
 {¶ 19} A canine sniff by a drug detection dog of the exterior of a vehicle that is lawfully detained for a traffic stop does not implicate Fourth Amendment rights. Illinois v. Caballes (Jan. 24, 2005), ___ U.S. ___, 125 S.Ct. 834; State v. Ramos, supra; State v. Heard (March 7, 2003), Montgomery App. No. 19323, 2003-Ohio-1047. Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. Ramos, supra. If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention. Id.
 {¶ 20} As part of his routine duties in conducting a traffic stop, Dep. Bodine ran a computer check on Defendant's license, registration and plates in order to determine, among other things, if Defendant had any outstanding warrants. Dep. Bodine testified that a traffic stop typically requires fifteen to twenty minutes to complete. Dep. Bodine further testified that just seven minutes into this traffic stop, and before Bodine received the license and registration information he had requested, Bodine walked his drug detection dog around the outside of Defendant's vehicle. It is clear from this evidence that the canine sniff of Defendant's vehicle occurred well within the time normally required to complete a traffic stop and did not extend the duration of this traffic stop beyond the period of time reasonably necessary to complete the stop and issue a traffic citation. Carlson, supra. Once the drug dog alerted to Defendant's vehicle, police had probable cause to search that vehicle for contraband. Id. No violation of Defendant's Fourth Amendment rights has been demonstrated.
 {¶ 21} Defendant's second assignment of error is overruled.
 {¶ 22} Third Assignment of Error
 {¶ 23} "Appellant's statements must be suppressed since they were taken without a valid waiver of his constitutional rights and are fruit of the poisonous tree."
 {¶ 24} The procedural safeguards identified in Miranda apply only when a suspect is subjected to "custodial interrogation," which means questioning initiated by law enforcement officers after a person has been taken into custody. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694; State v. Hoffner, 102 Ohio St.3d 358, 2004-Ohio-3430.
 {¶ 25} Dep. Bodine testified at the suppression hearing that although Defendant was in custody in the rear of his cruiser, he did not ask Defendant any questions. Defendant's statement to Bodine, asking Bodine to help Defendant out by losing some of the drugs Bodine found in Defendant's car, was spontaneous and volunteered by Defendant. Statements made on the subject's own initiative in the absence of questions or other conduct by police do not constitute "interrogation." City of Akron v.Milewski (1985), 21 Ohio App.3d 140. Under those circumstances, Defendant's statement did not need to be preceded by Miranda warnings to be admissible against him.
 {¶ 26} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, J. and Donovan, J., concur.