OPINION
{¶ 1} Defendant, Daniel Kuralt, appeals from his conviction and sentence for possession of marijuana and trafficking in marijuana.
 {¶ 2} On March 30, 2002, Trooper Ricardo Alonso of the Ohio State Highway Patrol was on routine traffic enforcement on Interstate 70 near the Preble-Montgomery County line when he observed an eastbound truck driven by Defendant slow down as it approached. Defendant's vehicle slowed down much more than cars ordinarily do. Trooper Alonso followed Defendant's vehicle, and he subsequently determined that Defendant was speeding, driving seventy-nine miles per hour in a sixty-five zone. In addition, Trooper Alonso observed Defendant's vehicle make unsafe lane changes and follow other vehicles too closely. Trooper Alonso initiated a traffic stop by activating his cruiser's overhead lights which automatically activated a video camera that recorded the subsequent traffic stop.
 {¶ 3} Trooper Alonso asked for and was given Defendant's license and the vehicle's registration. Defendant had a Massachusetts driver's license. The vehicle's plates were from California, and Defendant was not the registered owner of the vehicle. Trooper Alonso questioned Defendant about whose vehicle he was driving and where Defendant was going. Trooper Alonso then returned to his cruiser to begin processing the stop. Trooper Alonso called for a drug sniffing dog to be brought to the scene. He also called Defendant's license and the vehicle's plates into dispatch and began writing the citation for speeding.
 {¶ 4} Before Trooper Alonso finished writing the citation, and before he had received any information back from dispatch concerning the license and registration, Trooper Barrett arrived with his drug dog and walked the dog around Defendant's truck. After the dog alerted, the troopers then searched Defendant's vehicle and found a large quantity of marijuana.
 {¶ 5} Defendant was indicted on one count of Possession of Marijuana, twenty-thousand or more grams, in violation of R.C. 2925.11(A), and one count of Trafficking in Marijuana, over twenty thousand grams, in violation of R.C. 2925.03(A)(2). Defendant filed a motion to suppress the evidence, challenging the validity and duration of this traffic stop, which the trial court overruled following a hearing.
 {¶ 6} Pursuant to motions by Defendant requesting that his expert be allowed to analyze the videotape of this traffic stop, the trial court ordered that a copy of the videotape, as well as the original, be turned over to Defendant's expert. Defendant subsequently filed a motion to dismiss based upon a claim that exculpatory evidence, the original videotape, had been destroyed by the State. Following a hearing the trial court overruled Defendant's motion to dismiss.
 {¶ 7} Defendant entered a no contest plea to both charges and was found guilty. The trial court sentenced Defendant to a mandatory term of eight years on each count, to be served concurrently, and fined Defendant fifteen thousand dollars on each count.
 {¶ 8} Defendant timely appealed to this court from his convictions and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "APPELLANT'S DETENTION EXCEEDED THE REASONABLE AMOUNT OF TIME NECESSARY FOR A TRAFFIC STOP."
 {¶ 10} Defendant does not challenge the basis of the initial stop of his vehicle for a speeding violation, which was lawful. Dayton v.Erickson, 76 Ohio St.3d 3, 1996-Ohio-431. However, the duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity other than the traffic violation that justifies continued detention. State v. Brown (July 30, 2004), Montgomery App. No. 20336,2004-Ohio-4058; State v. Ramos, 155 Ohio App.3d 396, 2003-Ohio-6535;State v. Chatton (1984), 11 Ohio St.3d 59; State v. Robinette,80 Ohio St.3d 234, 1997-Ohio-343. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue a traffic citation and perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. Ramos, supra; State v. Carlson
(1995), 102 Ohio App.3d 585, 598-599. These investigative duties must be performed diligently. Id.
 {¶ 11} A canine sniff by a drug detection dog of the exterior of a vehicle lawfully detained for a traffic stop does not implicate Fourth
Amendment rights. Illinois v. Caballes (Jan. 24, 2005), ___ U.S. ___,125 S.Ct. 834; State v. Ramos, supra; State v. Heard (March 7, 2003), Montgomery App. No. 19323, 2003-Ohio-1047. Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop, so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. Ramos, supra. If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention. Id.
 {¶ 12} The trial court concluded that it was not necessary to determine whether police had a reasonable, articulable suspicion of criminal activity other than the speeding violation that would justify prolonging Defendant's detention because Defendant was not in fact detained longer than was necessary to complete the traffic stop. We agree.
 {¶ 13} As part of his routine duties in conducting traffic stops, Trooper Alonso ran a computer check on Defendant's license, registration and plates in order to check for outstanding warrants and determine if the vehicle was stolen. Trooper Alonso was entitled to detain Defendant for a period of time reasonably necessary to perform these investigative procedures, Ramos, supra, and he testified that he would not let someone go in any traffic stop until he has the relevant information back from dispatch. Moreover, Trooper Alonso did not fail to diligently investigate these matters simply because he first asked Defendant questions relating to ownership of the vehicle and Defendant's destination. We agree with the trial court that those questions were appropriate given the circumstances; the vehicle's plates were from California, Defendant had a Massachusetts license, and he was not the registered owner of the vehicle.
 {¶ 14} Just fifteen minutes after the stop began, the drug dog arrived on the scene, and within a minute or two the dog alerted to Defendant's vehicle providing probable cause to search the vehicle for drugs. Statev. Johnson (Mar. 25, 2005), Montgomery App. No. 20624, 2005-Ohio-1367. At the time the drug dog alerted to Defendant's vehicle, Trooper Alonso had not yet received from dispatch the license and registration information he had requested, nor had he completed writing Defendant's citation for speeding. Thus, it is clear from this record that the canine sniff occurred well within the time reasonably required to complete this traffic stop and did not extend the duration of this traffic stop beyond the period of time necessary to complete the stop and issue the citation. Johnson, supra. Defendant's Fourth Amendment rights were not violated.
 {¶ 15} Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 16} "THE APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE LOST CRITICAL PHOTOGRAPHIC EVIDENCE, FAILED TO NOTIFY THE DEFENSE OF ITS LOSS."
 {¶ 17} Defendant argues that his due process rights were violated by the State's failure to preserve materially exculpatory evidence, in the form of the original videotape of Defendant's traffic stop. Specifically, Defendant claims that if the video camera in Trooper Alonso's cruiser was turned on and recording while Alonso followed Defendant down Interstate 70, it would demonstrate that Defendant did not commit any traffic violations, and thus there was no probable cause or other legal justification for this stop.
 {¶ 18} The facts found by the trial court relevant to this issue are as follows:
 {¶ 19} "Trooper Rick Alonso, of the Ohio State Patrol, testified that he made a traffic stop on the Defendant on March 30, 2002. At the time of making the traffic stop of the Defendant, the Trooper was operating a patrol car which was outfitted with video taping equipment. He testified that the video camera is automatically activated when the car's emergency lights were turned on. That in this case when he turned on his overhead bar lights to stop the Defendant, the video camera in his vehicle was automatically activated. He testified that at no time during the stop of the Defendant's vehicle, including the period of time of the search of the vehicle, was the video camera turned off. He further testified that he completely reviewed the tape which was being presented to the Court and it truly and accurately represented.
 {¶ 20} everything which occurred during the stop of the Defendant's vehicle."
 {¶ 21} The trooper further testified that the tape which was presented to the Court was a copy of the original tape which he made the next day at the patrol post, and it was kept in his possession until it was delivered to the Prosecutor's office. The original tape, which was taken out of the patrol car, was reinstalled in the video equipment in the patrol vehicle as was the patrol's standard operating procedure. The video tape that the officer made was all inclusive of the stop of the Defendant. He testified that it was not altered in any manner, and it was a true and accurate depiction of the stop and search of the Defendant's vehicle.
 {¶ 22} Mr. Steve Cain, a stipulated expert in forensic tape analysis, testified on behalf of the Defendant. He testified in some detail as to the steps he performed in the analysis of the tape and the equipment which he used in analyzing the tape. His testimony can be summarized as follows: (1) The tape he examined was not the original tape from the police vehicle. (2) The tape was not what he referred to as "virgin tape," meaning that the tape had been used on a prior occasion and been recorded over. (3) There appeared to be some type of problem in the beginning and at the very end of the tape, when the equipment was first activated and then when it was turned off. And, (4) there was no evidence that the tape was edited during the period of the stop of the Defendant's vehicle.
 {¶ 23} The Defendant testified for purposes of the motion hearing in regard to the facts of the stop and his recollection of the search of his vehicle. The crux of his testimony in regard to the traffic stop is that he was not violating any traffic laws and that there was no reason for the officer to stop him. He also testified that the handler of the dog which hit on his vehicle opened the door to his truck and took other inappropriate action with the dog leading it to making a hit on his vehicle.
 {¶ 24} In State v. Fuller (Apr. 26, 2002), Montgomery App. No. 18994, 2002-Ohio-2055, this court observed:
 {¶ 25} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. SeeArizona v. Youngblood (1988), 488 U.S. 51, 57, 58, 109 S.Ct. 333, 337,102 L.Ed.2d 281; State v. Benton (2000), 136 Ohio App.3d 801, 805,737 N.E.2d 1046; State v. Lewis (1990), 70 Ohio App.3d 624, 633-34,591 N.E.2d 854. To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'California v. Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 2534,81 L.Ed.2d 413. Furthermore, in determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. State v.Johnston (1988), 39 Ohio St.3d 48, 529 N.E. 2d 898, paragraph five of the syllabus." Opinion at 7.
 {¶ 26} Here, as in Fuller, we decline to place a burden on the State to show that the destroyed evidence was not exculpatory. That may be appropriate where the State destroys evidence after Defendant has requested that it be preserved. Columbus v. Forest (1987),36 Ohio App.3d 269. In this case, however, the record amply demonstrates that Trooper Alonso made a copy of the videotape sometime between April 1-3, 2002, and thereafter the original tape was recycled/reused per the Ohio State Patrol's standard operating procedure before Defendant made his request for the videotape on June 25, 2002.
 {¶ 27} As for whether the original videotape in this case is materially exculpatory or even potentially useful, Trooper Alonso's uncontroverted testimony was that his cruiser camera did not record Defendant's traffic violations, the speeding, improper lane changes, or following too closely. That camera was activated automatically when Trooper Alonso turned on his cruiser's overhead lights to initiate this traffic stop, after he had witnessed these traffic offenses. Thus, the videotape would not demonstrate anything relevant to the prior legal justification for this stop, as no video evidence of the traffic violations exist. Therefore, such evidence was neither materially exculpatory nor even potentially useful.
 {¶ 28} Defendant has failed to demonstrate that the original videotape possesses an exculpatory value that was apparent before the evidence was destroyed. Trombetta, supra. Furthermore, Defendant has failed to demonstrate that the original videotape would depict anything different from the authenticated copy that was submitted, much less exculpate him for the crime for which he was charged. In any event, this record does not portray any bad faith, that is, ill will, conscious wrongdoing, dishonest purpose or intent to deceive or mislead another, on the part of Trooper Alonso in failing to preserve the original videotape. No violation of Defendant's right to due process has been demonstrated.
 {¶ 29} Defendant's second assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Donovan, J., concur.