[Cite as *State v. Haynes*, 2011-Ohio-5020.]

IN THE COURT OF APPEALS OF CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO. 2011CA10

vs.                              :          T.C. CASE NO. 2010CR218

BENNY E. HAYNES, JR.             :          (Criminal Appeal from
                                             Common Pleas Court)
    Defendant-Appellant         :

. . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2011.

. . . . . . . . .

Nick A. Selvaggio, Pros. Attorney; Richard Houghton, Asst. Pros. Attorney, Atty. Reg. No. 0082796, 200 N. Main Street, Urbana, OH 43078
    Attorneys for Plaintiff-Appellee

Darrell L. Heckman, Atty. Reg. No. 0002389, One Monument Square, Suite 200, Urbana, OH 43078
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Benny Haynes, Jr., appeals from his conviction and sentence for possession of heroin.

{¶ 2} Defendant was indicted on one count of trafficking in heroin, between one and five grams, in the vicinity of a school

or juvenile, R.C. 2925.03(A)(2), (C)(6)(c), and one count of possession of heroin, between one and five grams, R.C. 2925.11(A), (C)(6)(c). Defendant filed a motion to suppress the evidence, arguing that police impermissibly extended the duration of his traffic stop while waiting for a drug sniffing dog to be brought to the scene. The trial court overruled Defendant's motion to suppress, finding that police had sufficient reasonable suspicion of criminal drug activity to justify prolonging the traffic stop beyond the time normally required to complete a traffic stop and issue a citation.

{¶ 3} Defendant was found not guilty of trafficking in heroin but guilty of possessing heroin, following a jury trial. The trial court sentenced Defendant to three years of community control sanctions, a two hundred dollar fine, and a one year driver's license suspension.

{¶ 4} Defendant timely appealed to this court, challenging only the trial court's decision overruling his motion to suppress the evidence.

ASSIGNMENT OF ERROR

{¶ 5} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶ 6} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the

best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 7} The facts in this case are, for the most part, contained within the following stipulation that the parties entered into and the trial court admitted at the suppression hearing:

{¶ 8} "1. On July 22, 2010 at approximately 6:04 p.m., Defendant Benny E. Haynes, Jr. ("Haynes") drove a 1999 Chevrolet Prizm bearing Ohio registration EAQ2697 into Goshen Park in Mechanicsburg, Ohio.

{¶ 9} "2. The passenger in the vehicle driven by Haynes was Joshua Phillips.

{¶ 10} "3. On July 22, 2010 at approximately 6:04 p.m., Sergeant Eck of the Mechanicsburg Police Department drove his police cruiser into the upper-area of Goshen Park, on an unrelated assignment.

{¶ 11} "4. On July 22, 2010 at approximately 6:04 p.m., Sergeant Eck observed the vehicle driven by Haynes traveling

through Goshen Park.

{¶ 12} "5.  After initial observation of Haynes's vehicle, Sergeant Eck observed Haynes's vehicle travel around the back of Goshen Park.

{¶ 13} "6.  The posted speed limit within Goshen Park is ten (10) miles per hour.

{¶ 14} "7.  Sergeant Eck visually observed Haynes's vehicle as it was traveling around the back driveway of Goshen Park, and believed it was exceeding the posted speed limit.

{¶ 15} "8.  Sergeant Eck then initiated a traffic stop of Haynes's vehicle.

{¶ 16} "9.  Sergeant Eck, upon exiting his police cruiser and approaching Haynes's vehicle on foot, visually identified the driver of the 1999 Chevrolet Prizm as Benny E. Haynes, Jr., and the front-seat passenger as Joshua Phillips.

{¶ 17} "10.  After asking for the occupant's identifications, but before any further questioning, Sergeant Eck called for a 'drug sniffing' K-9 unit to start towards the location of the traffic stop.

{¶ 18} "11.  Sergeant Eck asked Haynes and Phillips what they were doing at Goshen Park.

{¶ 19} "12.  Sergeant Eck then asked Haynes whether Haynes was at the Park to meet someone or play on the playground.

{¶ 20} "13. Sergeant Eck then asked Haynes whether there was anything he needed to be concerned about in the vehicle, to which Haynes replied 'no.'

{¶ 21} "14. Sergeant Eck then asked Haynes and Phillips if there were any drugs, illegal narcotics, guns, or knives inside the vehicle, to which Haynes and Phillips replied 'no.'

{¶ 22} "15. Sergeant Eck then notified Haynes that a K-9 unit was en route, and that if narcotics were inside the vehicle, the K-9 unit would find them.

{¶ 23} "16. Sergeant Eck then asked Haynes if he ever had illegal narcotics inside the vehicle, to which Haynes first replied 'no,' but then stated that an individual named Brad Randolph had once smoked marihuana in the vehicle, but that there were no drugs or narcotics inside the vehicle.

{¶ 24} "17. Sergeant Eck's suspicions were raised as a result of Haynes's and Phillips's responses to the Sergeant's questions.

{¶ 25} "18. On July 22, 2010, at approximately 6:33 p.m., and twenty-nine (29) minutes after the initial traffic stop, Madison County K-9 Deputy Nick Lisska arrived at the scene of the traffic stop with K-9 unit 'Dolph.'

{¶ 26} "19. Deputy Lisska and 'Dolph' performed a walk around the exterior of Haynes's vehicle.

{¶ 27} "20. 'Dolph' indicated the presence of narcotics inside

the vehicle during the walk around.

{¶ 28} "21.　Haynes and Phillips were then detained, frisked for weapons, and placed in the back seat of Sergeant Eck's patrol cruiser.

{¶ 29} "22.　A search of the vehicle's interior ensued; on the rear passenger-side floorboard was found a previously-opened green bottle labeled 'Spring Valley St. John's Wort.'

{¶ 30} "23.　Inside the green bottle labeled 'Spring Valley St. John's Wort' were thirty-one (31) capsules that had been filled with heroin.

{¶ 31} "24.　Haynes did not consent to the search of the vehicle.

{¶ 32} "25.　Sergeant Eck did not issue a traffic citation for Haynes's visually-observed violation of the Goshen Park speed limit.

{¶ 33} "26.　A traffic citation, had one been issued by Sergeant Eck, would have been completed within fifteen (15) minutes or less."

{¶ 34} In addition to the above stipulation, the State presented one witness at the suppression hearing, Mechanicsburg Police Chief Samuel Faulkner.　Chief Faulkner testified that police considered Defendant's vehicle a vehicle of interest with respect to possible drug activity based upon various incidents, including police seeing that vehicle on June 28, 2010, at 230 Main Street in Mechanicsburg,

a place where people live who are involved in drug activity, and also police seeing that vehicle on July 21, 2010 in Pleasant View Estates, another location where people live that have known drug involvement.

{¶ 35} Defendant concedes in his brief that the initial traffic stop by Sergeant Eck for speeding was lawful. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431. Defendant complains that Sergeant Eck impermissibly prolonged or extended the duration of this traffic stop in order to allow a drug sniffing canine to be brought to the scene, and that resulted in an unlawful seizure that violated Defendant's Fourth Amendment rights. Therefore, the evidence seized by police as a result of that unlawful seizure must be suppressed.

{¶ 36} In *State v. Johnson*, Montgomery App. No. 20624, 2005-Ohio-1367, we stated:

{¶ 37} "{¶ 18} The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity other than the traffic violation and therefore justify continued detention. *State v. Chatton* (1984), 11 Ohio St.3d 59, 463 N.E.2d 1237; *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762, 1997–Ohio–343; *State v. Ramos,* 155 Ohio App.3d 396, 801 N.E.2d

523, 2003-Ohio-6535. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue a traffic citation and perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. *Ramos, supra; State v. Carlson* (1995), 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591. These investigative duties must be performed diligently. Id.

{¶ 38} "{¶ 19} A canine sniff by a drug detection dog of the exterior of a vehicle that is lawfully detained for a traffic stop does not implicate Fourth Amendment rights. *Illinois v. Caballes* (Jan. 24, 2005), 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d842; *State v. Ramos, supra; State v. Heard* (March 7, 2003), Montgomery App. No. 19323, 2003-Ohio-1047. Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. *Ramos, supra.* If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention. *Id.*"

{¶ 39} The trial court found, and we agree, that the duration

of this traffic stop was extended beyond the time necessary to complete a traffic citation in order to allow a drug sniffing canine to be brought to the scene. In that regard the parties stipulated that a traffic citation would take fifteen minutes or less, Stipulation 26, and that the drug sniffing canine arrived on the scene twenty-nine minutes after the initial traffic stop, Stipulation 18. Thus, the continued/prolonged detention of Defendant was lawful only if Sergeant Eck had a reasonable suspicion that Defendant's vehicle contained drugs. *Johnson*.

{¶ 40} The trial court found, and the State argues, that Sergeant Eck had a reasonable suspicion that Defendant was engaged in illegal drug activity or had illegal drugs in his vehicle, which justified continuing Defendant's detention while waiting for a drug sniffing dog to arrive, because: (1) Defendant and his vehicle were matters of interest to law enforcement investigating possible drug activity, (2) Defendant and his passenger exhibited nervous behavior, (3) Defendant admitted that a person at some unspecified time in the past had smoked marijuana in the vehicle but Defendant stated that the vehicle did not contain any drugs, and (4) Sergeant Eck's suspicions were raised as a result of Defendant's and his passenger's responses to Eck's questions.

{¶ 41} In *State v. Maldonado* (Sept. 24, 1993), Montgomery App. No. 13530, this court observed:

{¶ 42} "Law enforcement officers are authorized to briefly detain and question persons whom they reasonably suspect are involved in criminal activity in order to investigate and resolve those suspicions. *Terry v. Ohio, supra.* A suspicion is not reasonable merely because the officer possessed it; it must also, and necessarily, be one which a reasonable officer would maintain in the circumstances involved. *Id.* In any later judicial review, all the facts and circumstances before the officer must be given their due weight, and deference must be given to the officer's knowledge and experience when he or she acted on them. *State v. Freeman* (1980), 64 Ohio St.2d 291. Nevertheless, the officer must be able to articulate the grounds for the suspicion if it is later challenged. The officer may not rely on mere good faith or inarticulate hunches. *U.S. v. Porter* (8th Cir., 1987), 818 F.2d 679, cert. den. 484 U.S. 1006 (1984). He must be able to articulate grounds from which a reasonable officer would infer that some specific criminal misconduct was afoot. *Id.*

{¶ 43} "*     *     *

{¶ 44} "Since the decision of the Supreme Court in *State v. Bobo* (1988), 37 Ohio St.3d 177, police officers have more frequently cited the reputation of a vicinity as a 'high crime area' when articulating their reasons for a *Terry* stop performed there. This may reflect the greater law enforcement focus on street-level drug

crime, which is usually subtle in its methods and often violent in its consequences. However, those idiosyncracies do not diminish the requirements of the Fourth Amendment or its interpretation in *Terry.* The facts and circumstances before the officer must yet reasonably suggest that some specific criminal misconduct is afoot. That specificity requirement focuses on the criminal character of the act, not on its setting. Acts that are essentially neutral or ambiguous do not become specifically criminal in character because they occur in a high crime area. Acts that are not specifically criminal in character do not become criminal because they are inapposite to their setting and, therefore, 'suspicious.' The setting can inform the officer's judgment, but it does not make the act criminal. In order to detain an individual to investigate for crime, some nexus between the individual and specific criminal conduct must reasonably exist and must be articulated by the officer."

{¶ 45} The first factor, that Defendant and his vehicle were "matters of interest" to law enforcement investigating possible drug activity, is based on the fact that, on several occasions prior to this traffic stop, Defendant's vehicle had been observed by police at locations where people who are involved in drug activity live, and Defendant had been seen in the company of people who are involved in drug activity.  However, Defendant had no

record or history of prior involvement with drugs, and not everyone who sometimes associates with drug users uses drugs themselves.

{¶ 46} Defendant's presence at locations where drug activity takes place, and his association with people who are involved with that activity, while one factor to be considered in the totality of the facts and circumstances, is not itself indicative of any specific criminal activity on Defendant's part. A matter of interest, whatever that means, merely creates the basis for an investigation. It does not further permit a detention for purpose of that investigation, absent reasonable and articulable suspicion of specific criminal activity. *Id*. It is that element that distinguishes a valid *Terry* stop from the "inchoate hunch" that *Terry* rejects as justifying a search or seizure.

{¶ 47} The second factor, that Defendant and his passenger exhibited nervous behavior, is not particularly indicative of criminal conduct, and is often an innocent but common reaction to being stopped by police. The degree of nervousness exhibited by Defendant is unknown in this case.

{¶ 48} The third factor, that Defendant stated that a person at some unknown time in the past had smoked marijuana in the vehicle but that the vehicle did not now contain any drugs, does not demonstrate that Defendant, at the time of the traffic stop, was

engaged in any illegal drug activity and, in any event, is too stale to be of any value.

{¶ 49} With respect to the final factor, that Sergeant Eck's suspicions were raised as a result of Defendant's and his passenger's responses to Eck's questions, we have examined the questions Sergeant Eck asked, as reflected in this record, concerning whether there were any drugs, guns, knives or anything else in the vehicle Eck needed to be concerned about, as well as Defendant's and his passenger's responses, and we find nothing that reasonably would raise any suspicion that Defendant was then engaging in illegal drug activity at that time.

{¶ 50} The totality of the facts and circumstances is not sufficient as a matter of law to give rise to a reasonable suspicion that Defendant was engaged in some specific criminal misconduct, in this instance drug activity. Accordingly, the continued detention of Defendant while waiting for a drug sniffing canine to arrive on the scene constituted an unlawful seizure, and the evidence police subsequently discovered in Defendant's vehicle as a result of that illegal seizure should have been suppressed by the trial court.

{¶ 51} Defendant's assignment of error is sustained. The judgment of the trial court will be reversed and this matter remanded to the trial court for further proceedings consistent

with this opinion.

FAIN, J., And FROELICH, J., concur.

Copies mailed to:

Richard Houghton, Esq.
Darrell L. Heckman, Esq.
Hon. Roger B. Wilson