[Cite as *State v. Beavers*, 2012-Ohio-6222.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellant                      :               C.A. CASE NO.     24994

v.                                              :               T.C. NO.     10CR2971

REUBIN J. BEAVERS                               :                  (Criminal appeal from
                                                                  Common Pleas Court)

    Defendant-Appellee                       :

                                                :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the    31st    day of    December   , 2012.

          . . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No.   0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 W. Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

          . . . . . . . . . .

FROELICH, J.

    **{¶ 1}**    The State of Ohio appeals from a judgment of the Montgomery County

Court of Common Pleas, which granted the motion of Reubin J. Beavers to dismiss his indictment for possession of crack cocaine and possession of marijuana due to the destruction of evidence. For the following reasons, the trial court's judgment will be reversed, and the case will be remanded for reconsideration of defendant's motion using the legal standard established by the Ohio Supreme Court.

I.

{¶ 2} At approximately 7:22 p.m. on September 15, 2010, Dayton Police Officer Sean Humphrey stopped Beavers' vehicle because Beavers' windows were heavily tinted and because the officer could smell a strong odor of freshly-cut marijuana emanating from the vehicle as the officer drove behind it. Officer Kari Staples, who was patrolling the area in a separate cruiser, saw Humphrey initiate the traffic stop and parked her cruiser behind Humphrey's cruiser. Beavers was asked to exit his vehicle, and Humphrey patted him down for officer safety. During the patdown, Humphrey felt and retrieved small bags containing marijuana and crack cocaine from Beavers' front pants pocket.

{¶ 3} Both cruisers had audiovisual recording capabilities, and both cruisers recorded some or all of the stop. The cruisers' audiovisual recordings were saved and maintained pursuant to Dayton Police Department General Order 3:02-4, XXI. Under that policy, audio and video recordings are retained for 45 days, at which point they are permanently erased and the blank disks are returned to the cruisers to be reused.

{¶ 4} On September 21, 2010, Beavers was charged in Dayton Municipal Court with possession of marijuana in an amount less than 100 grams. Case No. 2010-CRM-9724. The case arose from the marijuana retrieved from Beavers during the

September 15 stop.  On October 22 (a Friday), Beavers' attorney in the municipal court case filed a demand for discovery, which included a request to "**Preserve and provide any video/audio tapes**; See State v. Benton (2000) 136 Ohio App.3d 801."  (Emphasis in original.)  The audiovisual recordings from Humphrey's and Staple's cruisers were destroyed three days later, in accordance with Dayton Police Department General Order 3:02-4, XXI.

{¶ 5}    On February 2, 2011, Beavers was indicted with possession of crack cocaine, a fourth degree felony, and possession of marijuana, a minor misdemeanor.[1]  These charges also stemmed from the drugs that were seized during the September 15 stop.  The parties stipulated that the sole reason for the delay in the indictment was that the Miami Valley Regional Crime Lab had a backlog of cases.  The parties agree that the audiovisual recordings were not preserved by the Dayton Police Department, and they were unavailable at the time of Beavers' indictment.

{¶ 6}    In August 2011, Beavers filed a Motion to Compel and/or Dismiss.  He asserted that the video recordings from the police officers' cruisers appeared to be unavailable, despite the fact that the prosecutor was required to provide the "cruiser cam" under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Beavers emphasized that the recordings "would be especially probative in this case because the reason given for the stop was that the officer, riding in his cruiser and following the defendant while driving down Salem Avenue, could, even at normal traffic speed, smell the

---

[1] According to the Dayton Municipal Court online docket, the municipal court case was continued several times. The case remained active until October 5, 2011, at which point the charges were withdrawn due to the indictment.

odor of marijuana." (It is undisputed that the unburnt marijuana weighed 1.86 grams.) Beavers asked the court to dismiss the action due to the State's destruction of exculpatory evidence. In another supporting memorandum, Beavers further noted that the recordings "would have shown the actions taken by the officers at the scene and would have preserved the audio recordings made by both officers as the events unfolded." Beavers argued that the State should bear the burden of establishing that no due process violation occurred, because the destruction of the videotapes occurred after Beavers requested those items to be preserved.

{¶ 7} The trial court granted Beavers' motion to dismiss, finding that Beavers' right to due process was violated by the State's destruction of the audio/video recordings. The trial court followed *Columbus v. Forest*, 36 Ohio App.3d 169, 522 N.E.2d 52 (10th Dist.1987), which held that, when the State fails to respond in good faith to the defendant's request to preserve evidence, the State bears the burden to show that the destroyed evidence was not exculpatory, but the defendant must show that the evidence could not be obtained by other means. The trial court concluded that "[n]othing in the *Stipulation of Facts* or in the *State's Response to Defendant's Motion to Dismiss* persuades this Court that the destroyed audio/video recordings have no exculpatory value." The court further found that Beavers was prejudiced by the destruction of the recordings, because "there appears to be no 'alternate channels' available to Beavers to challenge the officers' version of the stop." The court thus dismissed with prejudice the possession of crack cocaine and possession of marijuana charges.

{¶ 8} The State appeals from the trial court's judgment.

II.

{¶ 9}     The State's sole assignment of error states:

THE TRIAL COURT ERRED IN DISMISSING THE CASE FOR FAILURE

TO PRESERVE EVIDENCE IN VIOLATION OF THE FOURTEENTH

AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 10}     The State claims that the trial court erred in granting Beavers' motion to dismiss the indictment.   It argues that the trial court should not have followed the burden-shifting analysis in *Forest*, and that the trial court should have applied the law as set forth in *State v. Brown*, 170 Ohio App.3d 235, 2007-Ohio-179, 866 N.E.2d 584 (2d Dist.). Alternatively, the State asserts that, even if *Forest* did apply, Beavers did not demonstrate that he was prejudiced by the destruction of the recordings.

{¶ 11}     Within the last few years, the Ohio Supreme Court has addressed what standard should apply when evaluating an alleged due process violation based on lost or destroyed evidence.  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865; *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1.   The Ohio Supreme Court discussed United States Supreme Court case law on the issue, as follows:

> * * * Specific tests are applied to determine whether the state's failure
>
> to preserve evidence rises to the level of a due process violation.  The test
>
> depends on whether the lost or destroyed evidence involves "material
>
> exculpatory evidence" or "potentially useful evidence."
>
> In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d
>
> 413 (1984), the Supreme Court held that the government violates a

defendant's due process rights when material exculpatory evidence is not preserved. Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528, 81 L.Ed.2d 413. The defendant bears the burden to show that the evidence was materially exculpatory. *See State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991).

In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Supreme Court reviewed a case in which the state had failed to properly preserve semen samples and clothing obtained from a child who was the victim of a sexual assault. A police criminologist performed testing on the evidence but was unable to identify the assailant. *Id.* at 53–54, 109 S.Ct. 333, 102 L.Ed.2d 281. Expert witnesses testified at trial that the defendant might have been completely exonerated by timely performance of tests on properly preserved semen samples. *Id.* at 54, 109 S.Ct. 333, 102 L.Ed.2d 281. The defendant was convicted of child molestation, sexual assault, and kidnapping. *Id.* at 52, 109 S.Ct. 333, 102 L.Ed.2d 281. The Arizona Court of Appeals reversed the conviction on the ground that the state had breached a constitutional duty to preserve the semen samples. *Id.*

The Supreme Court reversed, stating:

The Due Process Clause of the Fourteenth Amendment, as

interpreted in *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

*Id.* at 57, 109 S.Ct. 333, 102 L.Ed.2d 281. In that situation, the court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. 333, 102 L.Ed.2d 281. *See also Illinois v. Fisher*, 540 U.S. 544, 545, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004).

*Youngblood* made a clear distinction between materially exculpatory evidence and potentially useful evidence. "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10.

(Footnote omitted.) *Powell* at ¶ 73-77.

{¶ 12} As stated above, the defendant generally bears the burden of establishing that lost or destroyed evidence was materially exculpatory. *E.g.*, *Powell* at ¶ 74, quoting *Trombetta*, 467 U.S. 479. However, several Ohio appellate districts have held that, when the defendant specifically requests that certain evidence be preserved and that evidence is subsequently destroyed or lost by the State, the burden shifts to the State to show that the evidence was not materially exculpatory. *E.g.*, *Columbus v. Forest*, 36 Ohio App.3d 169, 522 N.E.2d 52 (10th Dist.1987); *State v. Benton*, 136 Ohio App.3d 801, 737 N.E.2d 1046 (6th Dist.2000). *But see State v. Canter*, 5th Dist. Fairfield No. 01 CA 51, 2002-Ohio-3473 (rejecting *Forest*).

{¶ 13} In concluding that Beavers' due process rights had been violated, the trial court followed *Forest*, a case decided after *Trombetta*, but prior to *Youngblood*. In *Forest*, the Tenth District framed the issue before it as "the constitutional duty of the state to respond to a criminal defendant's discovery requests and the remedies available upon breach of that duty." *Forest*, 36 Ohio App.3d at 171. The *Forest* court concluded that the Due Process Clause places a duty upon the State to respond in good faith to a defense request to preserve evidence. *Id.* at 172. The court noted that this duty was limited to a good faith response; there was no attendant constitutional right to pretrial discovery or to have evidence preserved, other than evidence which is apparently exculpatory and unique. *Id.* at 173.

{¶ 14} Under *Forest*, the remedy for the State's breach of this duty was not necessarily dismissal of the charges. Rather, where the State breaches its duty to respond in good faith to a defense request to preserve evidence, "the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence." *Id.* If the State could not demonstrate that the destroyed evidence was not exculpatory, the defendant was

still required to show that the evidence could not be obtained through "alternate channels." *Id.*

{¶ 15} The trial court followed *Forest* based on dicta in *State v. Kuralt*, 2d Dist. Montgomery No. 20532, 2005-Ohio-4529, that placing "a burden on the State to show that the destroyed evidence was not exculpatory * * * may be appropriate where the State destroys evidence after Defendant has requested that it be preserved." *Kuralt* at ¶ 26, citing *Forest*. *See also State v. Terry*, 2d Dist. Greene No. 04 CA 63, 2004-Ohio-7257, ¶ 13. However, we have never adopted the approach taken in *Forest*, and we have expressly declined to address it when no request to preserve the evidence was made prior to the evidence's destruction. *See Kuralt* at ¶ 26; *State v. Fuller*, 2d Dist. Montgomery No. 18994, *3 (Apr. 26, 2002).

{¶ 16} With the issue now squarely before us, we decline to follow *Forest*. We reach this conclusion for several reasons. First, we note that *Forest* was decided one year prior to *Youngblood* and 19 years before the Ohio Supreme Court addressed the standard for evidence that was lost or destroyed by the State in *Geeslin*. Although *Forest* ostensibly interprets *Trombetta*, the Tenth District in *Forest* framed the issue differently than the United States Supreme Court and established a constitutional duty "to respond in good faith to a defense request to preserve evidence." *Forest*, 36 Ohio App.3d at 172-173, 522 N.E.2d 52. That duty was neither addressed nor recognized in *Trombetta*.

{¶ 17} More significantly, the standard established in *Trombetta* and *Youngblood* marks a clear distinction between materially exculpatory evidence and potentially useful evidence and the State's duties with respect to each category of evidence. The United

States Supreme Court recognized that materially exculpatory evidence was limited to evidence where the exculpatory nature was apparent and the evidence was unique. *Trombetta* at 489, *Powell* at ¶ 74.

{¶ 18} Under *Forest*, in which the burden is shifted to the State to establish the inculpatory nature of the destroyed or lost evidence, evidence that has been destroyed by the State may be treated as exculpatory, even though the exculpatory nature was not apparent prior to the evidence's destruction. Indeed, as the United States Supreme Court commented, "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Trombetta*, 483 U.S. at 486. The fact that a defendant has previously requested that an item be preserved suggests that the evidence may be potentially useful, but it does not reasonably suggest that the evidence is exculpatory when the exculpatory nature was not apparent prior to its destruction.

{¶ 19} We further note that in *Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004), which is cited in *Powell*, the United States Supreme Court reaffirmed the burden faced by defendants, even when the defendants had requested that the evidence be preserved prior to its destruction. In *Fisher*, the defendant was charged with possession of cocaine, and eight days later he filed a motion for discovery seeking all physical evidence that the State of Illinois intended to use at trial. The State responded that all evidence would be available, upon request, at a reasonable date and time. The defendant absconded prior to trial. Eleven years later, while Fisher was a fugitive, the substance seized from the defendant was destroyed in accordance with established procedures.

{¶ 20}    Fisher moved to dismiss the charge due to the destruction of evidence. The motion was denied, and the defendant was convicted after a jury trial.   The appellate court reversed, however, on the ground that the destruction of the evidence, after the request to preserve it, violated the defendant's right to due process, even though the State had not acted in bad faith.   The Illinois Supreme Court denied leave to appeal.

{¶ 21}    The United State Supreme Court reversed, reasoning that the substance had been tested and found to be cocaine, and, thus, it was not materially exculpatory.   Rather, the substance was "potentially useful evidence," the destruction of which violates due process only upon a showing of bad faith by the State.   Although discussing potentially useful evidence rather than materially exculpatory evidence, the Supreme Court discounted the significance of a pending discovery request or the importance of the destroyed evidence to the defense.   It stated:

> We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police.   Indeed, the result reached in this case demonstrates why such a *per se* rule would negate the very reason we adopted the bad-faith requirement in the first place: to "limi[t] the extent of the police's obligation to preserve evidence to reasonable grounds and confin[e] it to that class of cases where the interests of justice most clearly require it."   488 U.S., at 58, 109 S.Ct. 333.

> We also disagree that *Youngblood* does not apply whenever the contested evidence provides a defendant's "only hope for exoneration" and is

"'essential to and determinative of the outcome of the case.'" In *Youngblood*, the Arizona Court of Appeals said that the destroyed evidence "could [have] eliminate[d] the defendant as the perpetrator." Similarly here, an additional test might have provided the defendant with an opportunity to show that the police tests were mistaken. It is thus difficult to distinguish the two cases on this basis. But in any event, the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between "material exculpatory" evidence and "potentially useful" evidence. As we have held, the substance destroyed here was, at best, "potentially useful" evidence, and therefore *Youngblood's* bad-faith requirement applies.

(Citations omitted.) *Fisher*, 540 U.S. at 548-549.

{¶ 22} In addition, in *Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, the Ohio Supreme Court gave little weight to the timing of the destruction of the evidence. The Court noted that the Third District Court of Appeals had "devoted a portion of its analysis to whether appellant had requested that the state provide him with the evidence in question prior to its destruction." *Geeslin* at ¶ 8. In that case, the evidence had been destroyed within 24 hours of the defendant's arrest. The Court summarily addressed the Third District's discussion, stating: "[U]nder those circumstances, appellant could not reasonably be expected to have requested [the evidence] prior to its loss. We therefore do not need to address whether appellant had a burden to first request from the state the

evidence in question. Our inquiry here is what standard should apply in evaluating an alleged due process violation based on lost or destroyed evidence." The supreme court then articulated the standards established in *Youngblood* and *Trombetta*, which placed the burden on the defendant to establish a due process violation.

{¶ 23} *Geeslin* involved the destruction of a portion of a cruiser videotape that showed the defendant's driving prior to the stop. In determining that the missing portion of the recording could not have been materially exculpatory, the Ohio Supreme Court noted that "the missing evidence would not have been used to acquit appellant of the impaired-driving charge itself. Rather, it would have been used only with regard to the validity of the stop that led to appellant's arrest." *Id.* at ¶ 13.

{¶ 24} In this case, Beavers' counsel argued to the trial court that the video recording would have shown the actions taken by the police officers at the scene and would have provided "objective facts surrounding the decision to search first the defendant and then the car." Beavers emphasized that the stop was based in part on Officer Humphrey's claim that he could smell unburnt marijuana from his cruiser while driving behind Beavers' vehicle. Only 1.86 grams of marijuana was found during the stop. Thus, Beavers argued that the cruiser video recordings would undermine the legitimacy of the stop of the vehicle and the search of his person. He did not claim that he did not, in fact, possess the baggies of marijuana and cocaine. Under *Geeslin*, it would appear that the video recordings would not be materially exculpatory, but only potentially useful. However, following *Forest*, the trial court never engaged in this analysis.

{¶ 25} *Youngblood* has been subject to criticism. *See*, *e.g.*, Norman C. Bay, *Old*

*Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 Wash. U.L. Rev. 241 (2008). In our view, that criticism is well-deserved. *See*, *e.g.*, *State v. Barron*, 2d Dist. Greene No. 10-CA-28, 2011-Ohio-2425, ¶ 29-30 (Froelich, J., concurring).

{¶ 26} Nevertheless, we are bound to follow to the dictates of the Ohio Supreme Court, which has chosen to follow *Trombetta*, *Youngblood* and *Fisher*. Accordingly, we agree with the State that the trial court erred when it applied the analysis in *Forest* in this case. In light of this disposition, the State's alternative argument that Beavers was not prejudiced by the destruction of the recordings is moot and we need not address it.

{¶ 27} The first assignment of error is sustained.

III.

{¶ 28} The trial court's judgment will be reversed, and the matter will be remanded to the trial court for reconsideration of Beavers' motion to dismiss the indictment using the standard established by the Ohio Supreme Court.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

R. Lynn Nothstine
Lucas W. Wilder
Hon. Dennis J. Langer