[Cite as *State v. Arnett*, **2018-Ohio-4227.**]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-3 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-388 |
| | : | |
| TOMMY L. ARNETT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of October, 2018.

. . . . . . . . . .

RYAN SPITZER, Atty. Reg. No. 0093515, Miami County Prosecutor's Office, Appellate Division, Safety Building, 201 W. Main Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee

RENEE D. BUSSE, Atty. Reg. No. 0092823, 123 Market Street, P.O. Box 910, Piqua, Ohio 45356
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Tommy Arnett appeals from his convictions for assault and harassment by inmate. Finding no error, we affirm.

## I. Background

{¶ 2} Arnett was first indicted on charges of harassment by inmate in December 2016. The charges resulted from an incident the month before at the Miami County Jail, where Arnett was incarcerated, between Arnett and corrections officers, when he allegedly struck one officer and repeatedly spit or tried to spit at the officers. The charges were dismissed by the State in April 2017 pending the possibility of new evidence.

{¶ 3} In August 2017, Arnett was reindicted on two counts of harassment by inmate and also indicted on one count of assaulting a corrections officer. In discovery, the State produced a video recording from cameras at the jail that it believed captured the incident. Sometime after the video was produced, it was discovered that the video captured only the immediate aftermath of the incident. According to the State, it contacted the jail and asked it to send the full video recording, but jail personnel said that the video no longer existed.

{¶ 4} The case was tried to a jury in early 2018. Among those witnesses who testified for the State were the corrections officers involved in the incident and the Sheriff's deputy who investigated. The corrections officers testified that, on November 7, 2016, Arnett was upset, pounding on his cell wall, threatening officers, and attempting to flood his cell. Lieutenant Tiffany Upham and Corrections Officers Jack Snyder and Jacob Kerrigan removed Arnett from his second-floor cell to take him down to the first floor so that the cell could be cleaned. Snyder testified that when Arnett walked out of the cell, he

"kind of did a little lunge" in Kerrigan's direction. (Tr. 132). Snyder said that Arnett was agitated, had clenched fists, and "just kind of tensed up like he was ready to fight Officer Kerrigan." (*Id*.). Snyder testified that, in the elevator, Arnett had a combative demeanor. Kerrigan told Arnett to face the back wall, and when Arnett eventually turned around, he grabbed the handrail. The officers told Arnett multiple times to put his hands behind his back, but Arnett refused. Finally, the officers forced him to the floor and cuffed him. When they exited the elevator, Arnett was still resisting, so Lieutenant Upham went to retrieve the restraint chair. Snyder testified that he then saw Arnett "lift up and do a swinging strike to the left side of Officer Kerrigan's face," striking him on his ear and cheek. (*Id*. at 137). Kerrigan testified that as he was walking Arnett, Arnett "pulled away from me and struck me in the left side of my face with an elbow." (*Id*. at 162). Arnett continued to yell threats. As the officers worked to put Arnett in the restraint chair, he spit at Officer Snyder and tried to spit again, but Officer Kerrigan had put his hand over Arnett's mouth.

{¶ 5} Sergeant Randy Slusher responded to the disturbance and investigated the incident. He testified that when he arrived not long after the incident had occurred, he noticed right away that Kerrigan's ear was "really red." (*Id*. at 197). He photographed Kerrigan's ear and cheek, and the photograph was admitted at trial.

{¶ 6} On the first floor of the jail, a camera points directly at the elevator from one angle and another camera points to the same location from a different angle. The corrections officers agreed that the cameras should have recorded the entire incident, but the video recording played at trial submitted as a joint exhibit showed only the moments immediately after the incident. Sergeant Slusher testified that he never requested or watched the video from the cameras. No explanation was provided at trial for why the

preserved portion of video recording did not encompass the assault itself.

{¶ 7} Arnett testified in his defense and denied assaulting Officer Kerrigan or spitting at any of the officers. On cross-examination, he read a portion of his written statement from the night of the incident, in which he stated that an officer, presumably Officer Kerrigan, " 'put me in the chair and I jerked away from him. My elbow rubbed across the face—across his face.' " (*Id.* at 226).

{¶ 8} The jury found Arnett guilty on all three counts. The trial court sentenced him to twelve months in prison on each count and ordered that he serve two of the sentences consecutively for a total of twenty-four months in prison.

{¶ 9} Arnett appealed.

## II. Analysis

{¶ 10} Arnett's sole assignment of error is a claim that trial counsel was ineffective:

DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL LEVEL WHERE TRIAL COUNSEL FAILED TO FILE A MOTION TO COMPEL, MOTION TO SUPPRESS, OR MOTION TO DISMISS RELATIVE TO THE STATE'S FAILURE TO PRODUCE POTENTIALLY [EXCULPATORY] VIDEO EVIDENCE.

{¶ 11} To establish a claim for ineffective assistance, Arnett must show both that trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable possibility that but for counsel's deficient performance the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Arnett argues that it was objectively unreasonable for trial counsel not to file

a motion to compel, motion to suppress (testimony from the officers about the incident, presumably), or motion to dismiss based on the State's failure to produce or preserve the video recording of the incident. The ultimate issue in any of these motions would have been whether Arnett's due-process rights were violated by the State's failure to preserve a portion of the video.

{¶ 12} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence." (Citation omitted.) *State v. Bolden*, 2d Dist. Montgomery No. 19943, 2004-Ohio-2315, ¶ 51. Evidence is "materially exculpatory" if it (1) possesses "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74. "Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 88. "The defendant bears the burden to prove that the evidence in question was materially exculpatory, not merely potentially useful." *State v. McClain*, 2016-Ohio-838, 60 N.E.3d 783, ¶ 23 (2d Dist.), citing *Powell* at ¶ 74.

{¶ 13} Arnett concedes that, under current law, he cannot satisfy his burden to prove that a video depicting the entire incident would have been materially exculpatory.

He asks us to alter the burden of proof by placing the burden on the State to prove that the destroyed evidence was not materially exculpatory. Arnett acknowledges that we recently declined an invitation to alter the burden in *State v. McClain*, but he says that his case presents a more compelling reason for doing so.

{¶ 14} *McClain* also concerned unpreserved video recordings. In that case, the defendant was convicted of heroin possession. The police received a report that a vehicle was stopped at a light and that the driver was slumped over the steering wheel. Officers responded, observed signs of intoxication, and administered field sobriety tests. When he failed the tests, the officers arrested the defendant for operating a vehicle while intoxicated (OVI) and took him to the police department, where a breathalyzer test was administered. He was then taken to jail, where a search of the jacket he was wearing turned up heroin in a pocket. *Id.* at ¶ 4-7.

{¶ 15} The police cruiser had a dash camera that should have recorded the traffic stop, and the jail had cameras that should have recorded the search. Approximately three and a half months after the arrest, the defendant filed a motion to compel discovery and to preserve any videos. The State represented that it did not know whether the video had since been "taped over" but that it would "do everything it can in its power to do what it can to get the video." *Id.* at ¶ 34. Apparently, no video was located and no evidence was presented that established why, though it appears that police department and jail retention policies were to blame.[1] In addition to a motion to compel discovery, the

---

[1] Apparently, the trial court found that the police department had a 90-day retention policy on cruiser camera recordings and that the jail had a 60-day retention policy. We noted, however, that there was "no evidence in the record of either of those policies (although neither party appears to contest this), nor is there evidence that the video recordings that [Defendant] sought were destroyed pursuant to those policies. In fact, there is no

defendant filed a motion to dismiss or suppress evidence. He argued that the cruiser video was "highly relevant" to the issue of whether there was probable cause to arrest him for OVI and that the jail video would have shown that the jacket in which the heroin was found would not have fit him and did not belong to him. *Id.* at ¶ 13. The trial court overruled the motions. The court found that the defendant had not met his burden of proving that the dash cam video would be materially exculpatory, noting the independent evidence of his intoxication—the officers' observations and the failed breathalyzer test. The trial court concluded that probable cause had existed for the arrest. The court also found that, because a description of the jacket that the defendant was wearing was available on a property receipt, the jail video was at best potentially useful, and that there was no evidence that the video was destroyed in bad faith. *Id.* at ¶ 15-16.

{¶ 16} We affirmed. The defendant claimed on appeal that his due-process rights were violated by the destruction of the videos, arguing that the video recordings were materially exculpatory and that the apparent destruction of them required the dismissal of the charges. The defendant argued that we should alter the burden of proof, saying that "the State should bear the burden of establishing that any destroyed evidence was not materially exculpatory, particularly when a defendant faced potential incarceration." *Id.* at ¶ 25. We declined to do so. Because the burden of proof is mandated by Ohio Supreme Court and United States Supreme Court precedent, we found that, we "lack[ed] the authority" to alter it. *Id.* The majority was critical of the current law placing the burden on the defendant.[2] Nevertheless, "under current law, the defendant bears the burden to

---

evidence in the record that the video recordings have been destroyed, although apparently this is not in dispute." *McClain* at ¶ 37.

[2] The present author, concurring, was not as critical of current law and wrote separately

establish that missing evidence is 'materially exculpatory' or that it was destroyed in 'bad faith,' " even though the latter is "a burden that is often overbearing." *Id.* at ¶ 31.

{¶ 17} In the present case, we are again invited to alter the burden of proof. Arnett says that here, unlike in *McClain*, there is no independent evidence that establishes his crime. The only other evidence of what happened was the testimony of those involved— the officers and Arnett. The unpreserved video, he argues, would have established conclusively whose version of the events was correct. In the trial court, says Arnett, the State simply said that it did not have the video, offering no real explanation, and trial counsel did not press for an explanation on the record, which made it all but impossible for him to bear the burden of proving that the missing evidence was either materially exculpatory or destroyed in bad faith.

{¶ 18} Once again, we decline the invitation to alter the burden of proving material exculpability or bad faith, and we do so for the reason that we gave in *McClain*: "As an intermediate court of appeals, we lack the authority to alter the burden of proof mandated by Ohio Supreme Court and United States Supreme Court precedent." *Id.* at ¶ 25, citing *State v. Beavers*, 2012-Ohio-6222, 986 N.E.2d 516, ¶ 26 (2d Dist.) (following high court precedent to reject shifting the burden to the State to establish the inculpatory nature of lost or destroyed evidence and rejecting the position that "evidence that has been destroyed by the State may be treated as exculpatory, even though the exculpatory nature was not apparent prior to the evidence's destruction").

{¶ 19} Arnett has not satisfied his burden to prove that the missing portion of the

---

that it "strikes a reasoned balance on the question of who should bear the burden to prove that unavailable evidence would likely make a difference." *McClain* at ¶ 47 (Hall, J., concurring).

video was materially exculpatory or that it was missing because of bad faith. The record here contains almost no evidence that would support either finding.

{¶ 20} Arnett admits that he cannot prove that the missing portion of the video was materially exculpatory, because there was no evidence of what the video showed. As the Eighth District has said, "[g]enerally, missing videotape evidence that purports to contain images of an actual crime or event at issue speaks for itself. Simply put, such direct evidence is by its very nature either inculpatory or exculpatory, or some combination of the two, and there is likely no 'test' of that footage that would be necessary to yield a result that would exonerate the accused." *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 16. Here, no one disputes that the jail video cameras should have captured what happened, which means that the missing video was either inculpatory—showed that Arnett assaulted Officer Kerrigan and spit at the officers—or exculpatory—showed that Arnett was assaulted by the officers and that he did not spit at them. (Alternatively, the video might show a combination of the two.) There was no evidence that anyone ever saw the missing video who could say which version of events it would have supported. While the video might have supported Arnett's version of events, it cannot be concluded that it would have shown a clear set of facts that supported either a dismissal or a limitation on the testimony about the events. *Compare id.* at ¶ 21 (concluding the same on very similar facts).

{¶ 21} Assuming that the missing video was potentially useful, there was no evidence that it was destroyed, or at least was unavailable, because of bad faith. There was no evidence that the officers, or anyone else, acted to destroy or hide the missing video. Indeed, we can find no explanation in the record, or even a hint, as to what

happened to it. Arnett says that it was not reasonable to believe that the aftermath of the incident was preserved but not the incident itself. He points out that the witnesses all agreed that the cameras should have captured the incident. From these premises, Arnett leaps to the conclusion that the missing video must have supported his version of the events and, for that reason, was erased. Based on this record, we simply do not know why the unpreserved portion of the video was unavailable, and an innocent act is just as likely as a nefarious one. We will not speculate as to which type of act was to blame. Consequently, we cannot conclude that the failure to preserve the video was the result of bad faith.

{¶ 22} Arnett asserts that he cannot satisfy his burden because trial counsel rendered ineffective assistance by failing to file a motion that would have forced the State to explain what happened at an evidentiary hearing. Based on the trial transcript, it is apparent that counsel knew that a portion of the video was not available. But there is nothing in the record to suggest that it was unavailable because of bad faith. As such, there is nothing in the record to indicate that the result would have been any different if such a motion had been filed.

{¶ 23} Another reasonable possibility, of course, is that trial counsel did not want the video of the assault produced. It is conceivable that counsel believed the missing video would not help the defense of his client and might result in little chance of exoneration. In that case, not pursuing the video would have been a defensible strategic decision. At trial, counsel did forcefully argue that the State did not meet its burden of proof because the State did not produce the relevant video, and that therefore the jury should return a not guilty verdict. That could have been the best defense.

{¶ 24} Either way, we cannot say that counsel's conduct in this matter was objectively unreasonable and, even if it were, there is no evidence of a reasonable possibility that but for counsel's failure to pursue the unpreserved video, Arnett would not have been convicted.

{¶ 25} Finally, as we indicated, resolving this matter in Arnett's favor would be purely speculative so it is not appropriate to consider his claim on direct appeal. The Ohio Supreme Court reached a similar conclusion about a similar ineffective assistance claim in *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52 (2000). In that case, the defendant-appellant maintained that he was not the person who committed the crime. Seeking to bolster that defense, defense counsel questioned witnesses about the fact that the defendant had facial hair when the crime was committed, but that no witness described the suspect as having facial hair. On appeal, the defendant argued that counsel was ineffective for not getting an expert to testify about the problems inherent in eyewitness identification, because if such an expert had testified, there was a reasonable probability that the outcome of the trial would have been different. In addition to concluding that counsel was not ineffective, the Court said that it was not appropriate to consider the claim on direct appeal:

> [R]esolving this issue in [Defendant]'s favor would be purely speculative. Nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal. See *State v. Keith* (1997), 79 Ohio St.3d 514, 536, 684 N.E.2d 47, 67; *State*

*v. Scott* (1989), 63 Ohio App.3d 304, 308, 578 N.E.2d 841, 844 (claim of failure to present mitigating evidence is properly considered in a post-conviction proceeding because evidence in support of claim could not be presented on direct appeal).

*Madrigal* at 390.

{¶ 26} Here, resolving the due-process issue in Arnett's favor would be purely speculative. Nothing in the record suggests what kind of testimony could have been provided about what happened to the missing portion of the video. This would require us to speculate about what evidence *might* have been presented at a hearing and then to speculate about what the trial court *might* have found. To establish material exculpability or bad faith at this point, Arnett must present proof outside the record, such as affidavits describing probable testimony. Such evidence may not be considered on direct appeal.

### III. Conclusion

{¶ 27} The sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . .

WELBAUM, P. J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Ryan Spitzer
Renee D. Busse
Hon. Christopher Gee